475 P.2d 641 (1970)
Loyal MORGAN (and Bernice E. Morgan), Plaintiffs in Error,
v.
Harold FREEL, Defendant in Error.
No. 70-329, (Supreme Court No. 23201.)
Colorado Court of Appeals, Div. I.
October 14, 1970.
John Ira Green, Alamosa, Frank L. Shaw, Monte Vista, for plaintiffs in error.
Elizabeth A. Conour, Del Norte, for defendant in error.
Not Selected for Official Publication.
DUFFORD, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and was subsequently transferred to the Court of Appeals under the authority vested in the Supreme Court.
Loyal Morgan brought suit against Harold Freel, alleging two claims for relief. The first claim rested upon an allegation *642 that a bill of sale, absolute on its face, was in fact a chattel mortgage. In his second claim plaintiff alleged that the parties had entered into a joint business arrangement for the operation of the construction equipment which was described in the aforementioned bill of sale. The relief sought by Morgan was for an accounting and a money judgment based on its result, the appointment of a receiver, dissolution of the joint business arrangement, and restoration of the equipment to his ownership and possession. The defendant Freel in his answer asserted several affirmative defenses to the complaint, and also numerous counterclaims against the plaintiff. The defendant also brought a third-party action against the plaintiff's wife, Bernice Morgan, who is here as a nominal party. After certain preliminary proceedings, the matter was tried to the court, and a judgment was entered in favor of the defendant at the close of plaintiff's case. By stipulation of defendant's counsel, the defendant's counterclaims and third-party action were dismissed. It is from such judgment and orders that plaintiff brings this appeal.
The trial court's final disposition of this entire case rested upon a finding that plaintiff had not sustained his burden of proof on either of his claims for relief, and upon the following specific finding made as to his first claim for relief:
"* * * [S]aid bill of sale was a conveyance of plaintiff's right, title and interest in said property to the defendant subject to a separate agreement between the parties that plaintiff would have the right to repurchase said property within ninety (90) days for the sum of $6,200.00, plus interest at seven (7) per cent on the sum of $5,200.00, and that plaintiff failed to exercise said right." (Emphasis added)
Upon review of the entire record, we conclude that this finding and the judgment based upon it cannot be sustained.
The general rule is that, before a bill of sale, absolute on its face, can be held to constitute a chattel mortgage, the evidence must be clear and convincing. Dewey v. Saffer, 60 Colo. 598, 155 P. 317. But, the form of the transaction is not conclusive, and if a transaction resolves itself into a security transaction, it is, in effect, a mortgage and will be treated as such. Hofmann v. Lamb, 113 Colo. 585, 160 P.2d 995; Rocky Mountain Gold Mines, Inc. v. Gold, Silver and Tungsten, Inc., 104 Colo. 478, 93 P.2d 973. The controlling factor is the intent of the parties, which is to be ascertained from all the facts and circumstances surrounding the transaction. See Annot., 33 A.L.R.2d 374.
In our opinion, the record here establishes that the bill of sale was in fact a chattel mortgage given as an incident to a security transaction between these parties. The defendant's version of most of the facts relating to the transaction between him and Morgan is pleaded with particularity in the defendant's fifth affirmative defense in his answer. The significant parts of that defense read as follows:
"1. That on or about June 4, 1962 Plaintiff came to Defendant and asked him to pay off a certain mortgage which was overdue and owing by Plaintiff to the Alamosa National Bank, covering the equipment set forth and listed in Plaintiff's complaint herein, promising to pay Defendant with interest and for his expenses within 90 days therefrom; that at that time Plaintiff told Defendant that he was going to lose the equipment and that he had a large number of other creditors who were pressing him and that he wished to protect himself from their demands by putting his property out of his own name and into the name of Defendant for the purpose of preventing his creditors from reaching it. That Defendant told Plaintiff that he would have to be paid within 90 days with interest and all expenses connected therewith, and that due to the poor financial condition of Plaintiff at that time that the property would have to be granted to him by Bill of Sale and that since he would have to borrow the money from his bank, *643 the First National Bank in Alamosa, for that purpose the Bank would also have to be protected by a Bill of Sale.
"2. That plaintiff agreed to these terms and thereafter Defendant borrowed the money from The First National Bank in Alamosa and paid the indebtedness to the Alamosa National Bank which Plaintiff then owed and which was the sum of $5200.00 and that as security to Defendant and for the above stated purpose of preventing his other creditors from collecting their debts, Plaintiff made, executed and delivered a Bill of Sale therefor, which Bill of Sale is the same Bill of Sale set forth in Plaintiff's complaint but which is not properly or fully set forth in Exhibit A of Plaintiff's complaint herein.
"3. That Defendant gave Plaintiff permission to use such equipment for such 90 day period, but that Plaintiff and Defendant together placed Defendant's name on a portion of the equipment; that Defendant took constructive possession of such equipment by mortgaging the same to the First National Bank in Alamosa, which mortgage was known to and agreed to by Plaintiff and which mortgage was placed of record in the office of the County Clerk and Recorder of Rio Grande County. That Plaintiff agreed with the Defendant at the time of the execution of the Bill of sale that he would move the equipment, which was then in various parts of the San Luis Valley and in New Mexico, to Rio Grande and Saguache Counties, but failed, refused and neglected so to do in disregard of his promise to Defendant.
"4. That contrary to his agreement to pay such $5200.00 sum, together with interest and all of Defendant's expenses connected with such transaction within said 90 day period, Plaintiff failed to pay such amounts, but did in December of 1962 pay the major portion thereof by paying $5177.92 on such loan which was not in full settlement thereof and at such date did not ask Defendant for a reconveyance of the property described in such Bill of Sale.
"5. That thereafter within less than a month, Plaintiff returned to Defendant and asked for a return of $5000.00 out of the $5177.92 paid to Defendant and promised to pay the full amount due very shortly; that Defendant returned $5000.00 to Plaintiff relying on such promise; that Plaintiff has wholly failed, neglected and refused to pay Defendant any amount on such debt at any time thereafter and still refuses to pay Defendant."
Considering the claims for relief set forth in the complaint and the above statements contained in the answer, we think it was clear that the parties came to issue in this case on the basis that their dispute arose out of a security transaction. Also, from the time the defendant's answer was filed and through the time that preliminary orders were issued by a judge sitting prior to the final trial, this entire case proceeded on the theory that a security arrangement and its related disputes were involved. That prior judge commented following the pretrial hearing as follows:
"* * * After an hour and a half loosely-conducted pre-trial, we now proceed with the question of whether certain bill of sale, a document dated June 4, 1962, signed by Loyal Morgan and purporting to mortgage several pieces of heavy motor equipment, tractors, crawlers, land chisels and other items mentioned, which document has been conceded and admitted by the parties to have been a mortgage, in fact made out on a written form of a bill of sale." (Emphasis added)
No objection to this statement appears in the record, although the defendant later specifically attacked the act of that judge in treating this hearing as a pre-trial conference or hearing.
The prior judge then held that there had been no valid foreclosure of the mortgage *644 and placed the equipment in the custody of a receiver pending a trial on the issues.
The record also contains testimony by the defendant to the effect that when the plaintiff borrowed the additional sum of $5,000 the defendant delivered to the plaintiff a check marked "loan"; that the defendant recorded the bill of sale in several different counties; and that the defendant did not acquire possession of any of the equipment until some sixteen months after the bill of sale was executed.
In reviewing the record, the only evidence we have been able to detect which supports the trial court's finding that the transaction was a sale is the defendant's statement in the form of a conclusion that it was a sale; but even when making such statement, the defendant conceded that Morgan was to have a right to repurchase the equipment for a fixed sum plus "interest."
We, therefore, rule that the trial court's judgment is against the manifest weight of the evidence and must be reversed. Neelley v. Farr, 61 Colo. 485, 158 P. 458; Thuringer v. Trafton, 58 Colo. 250, 144 P. 866; Rhode v. Steinmetz, 25 Colo. 308, 55 P. 814.
The finding of absolute sale made by the trial court, and which we set aside here, precluded any determination of the status of the financial disputes between these parties. It also compelled the finding that there was no joint business arrangement between these parties, since Morgan's basic contention was that such arrangement was created because of his indebtedness to the defendant. The utterance of that finding also furnished the basis upon which defendant voluntarily abandoned his counterclaims and third-party action and barred any resolution of his affirmative defenses. The case must, therefore, be retried on all issues, except that issue pertaining to the legal effect of the bill of sale instrument.
The judgment is reversed, and the case is remanded for a new trial on a basis consistent with this opinion.
SILVERSTEIN, C. J., and COYTE, J., concur.